We of course thank the state as well. We will move on to the next case. Alright, our fourth case for today is Heiman v. Bimbo Foods Bakeries Distribution. And we will start with Mr. Patterson. Thank you very much, your honors. Counsel, may it please the court. As I said, I'm Mr. Tom Patterson. I represent John Heiman and his company JTE. Heiman was dismissed and we're not appealing from that, but I will refer to JTE as Heiman just for convenience, if that's okay. The case was brought as a two-count complaint, one for breach of contract and the other for tortious interference. Both claims were dismissed with prejudice on grounds that they were time barred on motion of the defendant, Bimbo Foods. In the eight minutes I have, I would like to make four points. First, with respect to the contract, Bimbo Foods' predecessor was a New York domiciliary and it included in its contract, in section 11.8, a New York choice of law provision that said that the validity, interpretation, and performance questions would be decided under New York law. So that sounds like merits to me. And under the usual Erie regime, when you have a diversity case, the statute of limitations follows the forum and Illinois seems to have a statute that says we want a 10-year statute of limitations for breach of written contracts except when we want a four-year statute. And the four-year statute does stem from the Illinois Uniform Commercial Code, but I'm having trouble seeing why that's still not a statement about the time in which you have to bring a suit. Well, the interesting thing about statutes of limitations is that the parties can decide themselves which gate they want to try to go through in order to get access to the court system. But they didn't say in their contract New York law will apply to all procedures, no matter which court, and nor really could they if you're going to be in federal court because federal procedure follows there. But your argument is, as I understand it, that let's be extreme and say that in Illinois, all contracts that are mixed contracts are regarded as contracts for sales of goods, even if it's just one product sold and it's otherwise a big package of services, whereas in New York, mixed contracts are always regarded as services contracts and so get a longer statute. But Illinois, I don't see why in our complex federalist system we can't have a situation where, for statute of limitations purposes, we characterize a contract, come up with four years, and then under New York law you can talk about your duties all you want. Well, the parties could have drafted a contract, could they not, that would say that Hyman never got title to the goods at all, that he was just a truck driver. They could have reached that conclusion. They could have drafted that contract. I'm not sure they did, though. We're talking about the time in which he can bring any kind of claim. But I think we would all agree that if they drafted a truck driver contract or a sales rep contract, he would have 10 years to file suit. Then maybe the exception in Illinois' statute of limitations for 2725 wouldn't be triggered. That's correct, and the parties themselves can decide to make that true. Well, it depends on what the contract is, but that's precisely what the district court did. The district court looked at this contract and said, well, there are actually a lot of goods being sold under this contract, bread, pastries, what have you. And so this is a contract for sale of goods. Are there services? Yes, he drives his truck around, he delivers them, but he's selling goods. But it's undisputed that he did not do that under New York law, and therefore he didn't interpret this contract under New York law. We're not looking at the substance of this. We're looking at the time to bring the lawsuit. Well, how can you decide the time to bring the lawsuit without looking at what the contract is? If it's an oral contract, you have five years. If it's a written contract, ten. If it's a construction contract, you have four. Well, you decide on the time separately, and then you move on to the merits. Is it in time or not? Well, Illinois has never done that in terms of conflicts of law principles. They say that the statute of limitations is procedure, but it will not impact substantive rights. So if the parties decide that it doesn't impact substantive rights, maybe New York does something quirky with its UCC. It would be the New York rule that would apply. It's just time. Well, if New York gives someone a substantive right that it's not a UCC contract, why wouldn't Illinois give full faith and credit to that? It would, but it just would require you to do it within four years. Within four years. Well, except that. I mean, look, and actually I know it might have been a little tight. He actually probably could have brought this lawsuit within four years because, as I recall, he really realizes what a bad deal this all is in early 2014. The October 21st of 2011 is when the rest of the distribution rights are sold. So the relationship is over by October of 2011. Four years from then, by my arithmetic, turns out to be sometime in 2015. Right? Yes. And for the tort claim, 2016. So, I mean, it's not like one of the reasons statutes of limitations are as long as they are is so you can figure out really whether an injury is worth suing on, right? Yes, I understand that. I think that's accurate, and I don't think anybody disputes that. But I don't think anybody disputes the fact that the parties can decide by their contract what statute of limitations apply. But they didn't say anything about that. They said New York law applies. Well, as you know, I'm sure, in the area of conflict of laws, there is quite a debate about whether a choice of law applies to the procedural aspects. And I'm sure, you know, if New York had some quirky rule of evidence, an Illinois court would not apply that rule of evidence. And indeed, in federal court, it would be the federal rules of evidence that would apply. But if New York law, just to take the extreme examples that the court outlined as a hypothetical, if New York law says, I don't care about title at all, and they are going to be common law contracts, and if Illinois, on the other hand, said, if you have title for a nanosecond, it's going to be covered by the UCC, both those states could do that. Likewise, the parties could design a contract that says you never have title or you always have title. They could design a contract that would say that. So the parties themselves can decide what statute of limitations applies in Illinois. And if they can do that directly, why can't they do that indirectly by means of a choice of law clause? By adopting New York law, they have, in effect, said that title doesn't matter. And there's good reasons for that to be true. If you look at this situation, Hyman didn't make the dough, bake the bread, package it up. He drove his truck to the Bimbo Foods Depot. It's a distribution arrangement. Drove it to the grocery stores, and he had probably sold an absolute title, pursuant to Section 3.1 of that contract, during the drive, until he went to the grocery stores themselves. Bimbo was appointed his agent for purposes of dealing with the chain grocery stores. He was not required under the contract to collect money. He was not required under the contract to pay money when he picked up the bread. So he neither paid money to pick up the bread nor collected money when he delivered it to the grocery stores. But you're raising a question which I would say is a question whether Illinois would characterize, for limitations purpose, this relationship as something falling under 2725 or not. If Illinois thought, no, this isn't anywhere near UCC territory, you'd get a 10-year statute. But that's not what the district court concluded. Correct. And so why is it that Illinois can decide whether this contract is subject to the UCC? Because that's what the Illinois statute of limitations asks the court to do, whether it's a state court or a federal court. Sure, but if the parties decide that it's not a UCC contract... Why do they have the right to impose their law on the court? The court's responsible for legal determinations. Because the parties have that right under freedom of contract. And they can decide that they have a distributorship agreement. They can decide that they have a sale of goods agreement. They can decide they have a sales group agreement. That's a pretty extreme view. They can decide they have a trucker. The parties can design their own... They can design the facts of the arrangement, but the legal characterization that belongs to those facts is for the court. Now, of course, the contract readily could have said, Bimbo will not complain if the suit is filed within 10 years. It could have said it will not complain if the suit is filed within the lifetime of any descendant of Queen Victoria. Sure. But it didn't say any of those things. It just said New York law, and then you're into this sequence in which, in Illinois, statute of limitations is not going to be absorbed from New York. They're going to use their own. This can all be varied by contract, but this contract doesn't do it. The only way this contract doesn't do it is if you ignore the New York choice of law provision. That's the only way this contract can be so ignored. And under Bellevue-Toyota, I would note, which is the case that they primarily rely on, there was no dispute as to what there was no difference between California law and Illinois law, articulated by the parties or articulated by the court. And as Judge Kendall quoted, this court is saying when the parties don't articulate a difference between the laws or when there is no difference between the laws, courts don't pay much attention to conflict of laws principle. And there was no indication that that case that they intended to disturb the settled. All right. Well, thank you very much, Mr. Patterson. I may give you an extra minute if you need it. Ms. Switzer. Good morning, Your Honors. May it please the Court, Stephanie Switzer on behalf of Bimbo Foods Bakery's Distribution, Inc. Your Honors, this is a very simple statute of limitations case. JTE, and originally Mr. Hyman as well, brought claims for breach of contract and tortious interference. Each of those claims is tie-barred for different reasons. Counsel would have this court apply, sort of start with the procedural issue under Illinois law, what is the statute of limitations, but then look to New York for substantive law, and then back to Illinois to say, okay, under New York substantive law, this is a common law contract. Therefore, under Illinois procedural law, it's a 10-year statute of limitations. And that just is not the correct test. As Your Honor pointed out, the correct analysis is under the Illinois Uniform Commercial Code. Is this a contract for sale of goods or some other type of contract that is outside of the UCC? So why are we sure that this is, in fact, a contract for the sale of goods? It sounds like Mr. Hyman and his company didn't, I mean, that they were really truck drivers. They were not people collecting the money. They were not people selling the baked goods. Why is this a UCC contract? Your Honor, that is a good question. It is very different than someone just being a truck driver. So Mr. Hyman, when he was a sole proprietor, he purchased a distributorship, a particular sales area, where he had the sole rights to sell bimbo baked goods to the stores in that area. That is typically a mix of chain stores, Jewelosco, Mariano's, Costco, as well as smaller sort of mom-and-pop shops, gas stations, little sort of bodega-type stores that sell baked goods, breads. He was the one responsible for determining how much bread to sell to this store, to buy. He's providing the distribution service, but is he selling the goods, or is he just facilitating bimbo's sale of the goods to these various customers? Your Honor, he ultimately is making the decision about how much bread to purchase from bimbo to ensure that his customers' shelves are stocked. He would look at a wide variety of factors in determining that. Where is that store located? What time of year is it? Are we talking about a store in Wrigleyville in the summer when hot dogs and hamburger buns sell very quickly? So he would need to order more of those to ensure that those are stocked. These independent operators, as bimbo calls them, they typically are negotiating with store managers, trying to get additional display space so that they can sell more product. Ultimately, the more product that Mr. Hyman and JTE sold from bimbo to these stores and the stores to customers, it increases the value of his personal distributorship that he owned and that he could then, if he wanted to, go and sell for a profit. Actually, so that's where bimbo's dirty tricks come in. He alleges that bimbo thought that it could get a better deal with another distributor so that they piggybacked on his efforts to develop this distributorship so that they could get rid of his 22 percent commission rate and get somebody else with an 18. And that's the kind of behavior that a lot of states have particular laws, such as the Wisconsin Fair Dealer Law and other laws to protect distributors from. And, Your Honor, yes, those are the allegations that Mr. Hyman and JTE make in the original complaint. And bimbo would submit that it's exactly those allegations that show that he was, in fact, engaged in the sale of goods. He was building up a business. He was developing those relationships. The complaint talks about the fact that he always substantially performed under the terms of the agreement, that he had increased the value of his sales area. How can JTE now turn around and say, but that actually I was just a delivery guy, I was just a middleman? So I have another question for you. He knows as of October 21, 2011, that he's lost the contract. And let's assume he thinks that was a breach of the contract. What troubles me about your theory is that you seem to be saying that any time a contract is breached, the aggrieved party should also suspect that a tort has been committed against them and so should rush off and file a tort suit if the breach of contract date is the trigger date. And that strikes me as a completely unmanageable rule. Breaches of contract happen all the time, probably in ways that are not tortious, and some small subset of them might also be tortious. So why is the breach of contract date the right trigger date for the tort? And, Your Honor, in this case, we would submit that it could be either January of 2011, when BIMBO informed JTE that it was canceling the distributor agreement. That's still just a breach of contract. But the way that the complaint reads, Mr. Hyman and JTE allege that they were substantially performing obligations under the agreement. He worked hard. Right, so it's a wrongful breach of contract. In other words, that's why we're calling it a breach. How do you distinguish your focus on the breach of contract date from the time when he either knew or reasonably should have known that a tort was being committed against him? He says it's not until late 2013 or early 2014 when he finds out that it's not just a one-off event where somebody sneaks into a store and pushes all of his merchandise off the shelves, but he finds out around that time, late 2013, let's say, that BIMBO is trying to deliberately drive down the value of his franchise and force him out of business, and he then finds out that that was what was going on, that it wasn't just a simple breach of contract. But I don't know why you think people should infer from the breach of a contract that a tort has been committed also. And, Your Honor, in this particular case, JT had received 13 breach letters over a period of time, and leading up to the termination of the distributor agreement in January of 2011, he had received three breach letters saying, You are not substantially performing under the agreement. Here is why, if you do not cure these deficiencies, your agreement can be breached. Is that the record? I don't believe that the full record of 13 breach letters. I didn't think the record showed all these curable breach records. I mean, I realize the contract divides breaches into non-curable and curable. The complaint does allege that he had the termination letter cited multiple curable breaches by JTE, which BIMBO alleges JTE failed to remedy. So he is focused on what he believes are curable breaches, saying, I did not breach. Even if I did, these were curable. I was substantially performing my obligations. All of a sudden, you are terminating my agreement. That's right. And so, again, I hate to be repetitive, but that describes to me a perfectly good breach of contract action that the person who's aggrieved should know about and should file a timely lawsuit if they wish to pursue it in litigation. I am unclear what in that story alerts the person that a tort is taking place. And in this case, your Honor, it's… Business defamation or some, you know, something like that. Sure, your Honor. In this particular case, it's the fact that he didn't believe that there were breaches. He didn't believe that there was deficiency, yet was still receiving these breach letters. Should think that there's a tort? Not necessarily, your Honor. Again, it's the facts particular to this case where he is alleging that he was performing under the terms of the contract, yet the company terminated this agreement without cause, and then forced him to sell his distributorship for what he claims was less than fair market value. So at minimum, in October of 2011, when the rest of this distributorship was sold for what he claims was less than fair market value, he should have been on notice. There was a very clear injury in his mind. That should have alerted him that people were sneaking into the stores at night and, you know, moving merchandise around. Really? Your Honor, it wouldn't necessarily alert him that there was this alleged nefarious campaign going on. But again, it's not whether… What is the evidence that begins to branch this case out from an ordinary breach of contract to a tort case, which he says he finds out after he hires the private investigator? So when does it cross the line? What evidence makes it cross the line? It's the fact that, again, your Honor, he believes he was substantially performing under this agreement. All right. If that's your answer, that's fine. You've already given that. Okay. If no one has any further questions, just about out of time. All right. Thank you. Thank you very much. I'll give you one more minute, Mr. Patterson, as long as you promise not to make it 65 seconds. Thank you, Your Honor. With respect to the tortious interference, I think the court's questions were correct, and I would also point out that the leading case that they cited, which was Knox v. Selatex in 1981, the Illinois Supreme Court case, went on and on about the fact that you don't need to know all the elements of liability before the statute of limitations trigger will begin to run. But nevertheless, in that case, you had a roof leak, and the lawsuit was about a roof leak, and the court said that the roof leak did not trigger the running of the statute of limitations. It remained as a question of fact. And therefore, I think that the tortious interference at the beginning of the statute of limitations is also a question. What kind of tortious interference claim is this? As I understand it, Bimbo is the only defendant. You can't interfere with your own contract. The tortious interference claim would be made against some third party, say an employee of Bimbo, who interfered with the contract. But the only named defendant is Bimbo. Does Illinois allow a tortious interference case directly against the contracting party? I don't think that issue was briefed in the court below. I know it wasn't briefed, but I'm asking the question. I'm not quarreling with you. I'm just saying that I'm giving you more of an off-the-cuff rather than a briefed, researched answer. You didn't do any legal research on this before you filed a suit against the contracting party. Well, I'm saying that the defendant didn't object on that grounds, either pre-suit or after suit. I have done a little research. The answer appears to be no. You can't sue the contracting party for interfering with its own contract. Okay. I appreciate the insight, Your Honor. But I would also say that he had relationships with the grocery stores themselves and with the relationships with the managers of those grocery stores, and they would be third parties. All right. Well, I think that will do. Thank you very much. Thank you. Thanks to both counsel. We'll take the case under advisement.